UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MICHAEL DEON JACKSON, | ) | 1:04-CV-06176 AWI GSA HC |
| | ) | |
| Petitioner, | ) | |
| | ) | FINDINGS AND RECOMMENDATION |
| v. | ) | REGARDING PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS |
| | ) | |
| CHARLES M. HARRISON, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kern, following his conviction by jury trial on November 20, 2000, of numerous felonies arising from three residential burglaries where he sexually assaulted his victims. See Exhibit F, Answer. Petitioner was sentenced to serve a determinate term of seventeen years, followed by a consecutive indeterminate term of fifty years to life, followed by a consecutive term of thirty years to life. Id.

Petitioner appealed his conviction to the California Court of Appeals, Fifth Appellate District (hereinafter "Fifth DCA"). Based on the Attorney General's concession of error, the appellate court remanded the case for the limited purpose of conducting an in camera review of certain materials to

1   which Petitioner contended he was entitled. On remand, the trial court determined Petitioner was not
2   entitled to said materials. Petitioner appealed the decision to the Fifth DCA. On July 7, 2003, the
3   Fifth DCA affirmed the conviction in a published opinion. People v. Jackson, 110 Cal.App.4th 280
4   (2003); Exhibit F, Answer. Petitioner then filed a petition for review in the California Supreme
5   Court on August 14, 2003. See Exhibit G, Answer. The petition was summarily denied on
6   September 24, 2003. See Exhibit H, Answer.

7       On August 25, 2004, Petitioner filed the instant petition for writ of habeas corpus in the
8   Sacramento Division of this Court. By order dated August 30, 2004, the petition was transferred to
9   the Fresno Division. Petitioner raises four claims for relief; however, they can all be summed up as a
10  challenge to the denial of discovery and disclosure of investigative reports relating to uncharged
11  similar crimes. Respondent filed an answer on December 30, 2004. Petitioner filed a traverse on
12  April 25, 2005.

**FACTUAL BACKGROUND**[1]

14      Petitioner contended on his initial appeal that the trial court erred when it denied discovery of
15  police files relating to uncharged similar burglaries, prowlings, and/or sexual assaults without first
16  conducting an in camera review of the documents. The Attorney General's office conceded error.
17  The appellate court reversed, directing the trial court to conduct the necessary in camera hearing
18  followed by an open adversarial hearing pursuant to Cal. Evidence Code sections 915(b) and 1040. If
19  the trial court found that the information contained no material, exculpatory evidence, it was directed
20  to deny Petitioner's discovery request and reinstate the judgment.

21      On remand, the trial court was presented with case files relating to similar incidents that
22  occurred at addresses on Dunlap Street, Bloomquist Street, and Candy Lane. The trial court reviewed
23  the files in camera. At the subsequent adversarial hearing on the record, the court observed that none
24  of the other incidents occurred on a date for which Petitioner had an alibi. The trial court found
25  "remarkable similarities" between the modus operandi in the Dunlap Street case and Petitioner's

---

[1] The factual summary of the case is derived from the published opinion of the Fifth DCA of July 7, 2003. Jackson, 110 Cal.App.4th 280 (2003); Exhibit F, Answer.

crimes. The trial court opined that the victim's initial description of her assailant would have caused the jury to conclude that Petitioner committed the Dunlap Street offense; thus the file contained no exculpatory material. The Bloomquist Street case, on the other hand, occurred at the wrong time of day and did not involve entry into the house. The Bloomquist Street victim could only describe the suspect as a male of an approximate weight and height. The trial court opined that there was "no basis on which anybody could have been charged" with the crime. As for the Candy Lane incident, while it occurred at the right time of day, it involved an attempted forced entry into the house and the court found there was "zero description of anyone, male or female, in that case."

Petitioner's counsel argued that the fact that the Dunlap Street victim could not identify Petitioner from a photographic lineup was highly probative of the theory that someone other than Petitioner committed all the crimes. Petitioner had a more circuitous argument as to why the Bloomquist Street and Candy Lane files should be produced.

Petitioner confessed to the crimes underlying his conviction. At trial, however, he claimed the confession was coerced: prior to the taping of the interview, the interrogating officers fed him details of the crimes and he confessed in return for promises of leniency and other considerations. According to Petitioner, this explained the discrepancies between the confession and the facts of the crimes. The prosecution countered with testimony that Petitioner had confessed to some crimes and denied others - including the Dunlap Street, Bloomquist Street and Candy Lane incidents. Petitioner responded by asserting that the interrogating officers also must have disclosed details of the uncharged offenses and encouraged him to deny them to bolster the credibility of his confession to the ultimately charged crimes. Petitioner also claimed that one of the interrogating officers had improperly vouched for the credibility of Petitioner's confession by testifying that Petitioner was only charged with the crimes to which he had confessed. Accordingly, Petitioner argued the files relating to the Bloomquist Street and Candy Lane investigations were discoverable because the dissimilarities or lack of identification would demonstrate a reason for not charging Petitioner aside from the officer's assessment of his credibility.

The trial court disagreed, found the files contained no material exculpatory evidence, and reinstated the judgment.

# DISCUSSION

## I. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

## II. Legal Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state

court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

### III.  Review of Petitioner's Claims

As previously stated, Petitioner raises four grounds for relief. However, they all relate to the discovery or disclosure of evidence of similar crimes. Petitioner contends the investigative reports of the uncharged crimes which occurred at Dunlap Street, Bloomquist Street and Candy Lane were exculpatory and should have been disclosed by the prosecution pursuant to Brady v. Maryland, 373 U.S. 83 (1963). He further alleges he was entitled to discovery of the material and the state courts wrongfully denied his motion to acquire them. He asserts he was thereby deprived of a defense of third party culpability.

These four claims were presented as one claim on direct appeal to the Fifth DCA and rejected in a reasoned, published opinion. People v. Jackson, 110 Cal.App.4th 280 (2003); Exhibit F, Answer. The claim was then presented to the California Supreme Court in a petition for review whereupon it was summarily denied on September 24, 2003. See Exhibits G and H, Answer. The California Supreme Court, by its "silent order" denying review of the 5th DCA's decision, is presumed to have denied the claims presented for the same reasons stated in the opinion of the Fifth DCA. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting this claim, the Fifth DCA found the investigative reports at issue were not exculpatory in nature nor could they lead to exculpatory evidence. Therefore, the court found the trial court's denial of Petitioner motion for discovery was not erroneous. The appellate court stated:

*Candy Lane & Bloomquist Street Incidents*

> The trial court did not err in denying discovery of the Candy Lane and Bloomquist Street files. The Candy Lane incident involved an attempted forcible entry into the house. The crimes charged against appellant all involved entry through unlocked or broken doors. Moreover, the Candy Lane victim never saw the suspect and could provide no description whatsoever. The Bloomquist Street victim reported a male suspect opening the gate to her backyard. She never saw the front of the suspect and could only provide a general description of height and weight. Given the lack of identification, appellant could not be excluded as a possible perpetrator of the crime and the files would not lead to exculpatory evidence.

*Dunlap Street Incident*

As the trial court remarked, the Dunlap Street incident shared many similarities with the crimes charged against appellant, including the time and location of the attack, mode of entry, nature of the touchings, flight of the suspect and his initial description. The trial court denied discovery because it found the evidence more inculpatory than exculpatory.

Jackson, 110 Cal.App.4th at 286-87.

The Fifth DCA further found that because the evidence was not exculpatory, the alleged failure to disclose it did not violate Petitioner's constitutional rights under Brady v. Maryland, 373 U.S. 83 (1963). In Brady, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87; see also Strickler v. Greene, 527 U.S. 263, 280-281 (1999).  The Supreme Court has stated that the duty to disclose such evidence is applicable even though there has been no request by the accused.  United States v. Agurs, 427 U.S. 97, 107 (1976).  The duty to disclose encompasses impeachment evidence as well as exculpatory evidence.  United States v. Bagley, 473 U.S. 667, 676 (1985).  Such evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  Id., at 682; see also Kyles v. Whitley, 514 U.S. 419, 433-434 (1995).  Additionally, "the rule encompasses evidence 'known only to police investigators and not to the prosecutor.'" Strickler, 527 U.S. at 280, *quoting* Kyles, 514 U.S. at 438.  To constitute a Brady violation, the Supreme Court has set forth a three-part test: 1) "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching"; 2) "[T]hat evidence must have been suppressed by the State, either willfully or inadvertently"; and 3) "[P]rejudice must have ensued."  Strickler, 527 U.S. at 218-282.

The state court properly found the failure to disclose did not amount to a Brady violation. First, Petitioner has not identified any evidence that the prosecution did not in fact disclose. Second, the investigative reports were not favorable to Petitioner. Indeed, the Dunlap Street crime evidence was very unfavorable to Petitioner. As noted by the appellate court, those crimes bore substantial similarities to the instant offenses. No reasonable defense attorney would have sought to adduce this evidence at trial because it would only have caused the jury to believe Petitioner committed those

crimes as well. Petitioner was not charged with the Dunlap Street crimes because the victims could not identify him, not because someone else was charged or identified. As for the Bloomquist Street and Candy Lane offenses, they hardly bore any similarities to the instant offenses; moreover, no one was charged or identified in any of those crimes. Therefore, none of the evidence allegedly withheld by the prosecution was favorable to Petitioner. Also, no prejudice ensued due to the withholding of the reports.

In addition, Petitioner's allegation that the trial court abused its discretion in denying his motion for discovery must be rejected. The appellate court found pursuant to California law that the trial court's determination was not erroneous. This issue is one of state law, and issues of state law are generally not cognizable on federal habeas. Estelle v. McGuire, 502 U.S. 62, 67, (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990). As discussed above, Petitioner's constitutional right to exculpatory evidence was not violated.

It cannot be said that the state court rejection of Petitioner's claims was unreasonable. The denial of his claims was not contrary to or an unreasonable application of controlling Supreme Court authority, and the claims should be denied.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days (plus three days if served by mail) after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to

1  28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified
2  time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th
3  Cir. 1991).

5     IT IS SO ORDERED.
6     **Dated:**   <u>**October 24, 2007**</u>        <u>  **/s/ Gary S. Austin**  </u>
                                                                   UNITED STATES MAGISTRATE JUDGE